**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 4:26-cv-4237 |
| | ) |
| v. | ) |
| | ) |
| NATHAN FULLER, | ) JURY TRIAL DEMANDED ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "SEC" or "Commission"), for its Complaint against Nathan Fuller ("Fuller") alleges as follows:

## NATURE OF THE ACTION

1.      From at least October 2022 through mid-2024 (the "Relevant Period"), Fuller, most recently acting through his company Privvy Investments, LLC ("Privvy"), offered and sold joint-venture interests in a crypto asset trading scheme that raised approximately $12.3 million from approximately 150 investors.

2.      To lure investors, Fuller made various misrepresentations and omissions, including that he would use proprietary AI-based trading bots to engage in high-frequency arbitrage trading on crypto asset trading platforms.  He falsely claimed that investors, who had a passive role in the venture, stood to make guaranteed profits exceeding 100% in as little as 21 days.  He allayed investor concerns with false statements that he held a money-transmitter license, that investor funds were secured by a surety bond, and that investor funds were insured by the FDIC.

3.      But Fuller did not engage in high-frequency arbitrage trading on crypto asset

trading platforms, and his purported trading bots did not function as represented.  He did not have a money-transmitter license, there was no surety bond, and investor funds were not insured or guaranteed.  Ultimately, he misappropriated approximately half of the investment proceeds for personal spending, used most of the remainder to make Ponzi-like payments, and lulled investors using fake account statements and fabricated correspondence from phony entities.

4.    Through his actions, Fuller violated, and unless enjoined will continue to violate, the securities-registration and antifraud provisions of the federal securities laws as specified below.  The Commission brings this action against Fuller seeking: (i) permanent injunctive relief; (ii) disgorgement of ill-gotten gains, plus prejudgment interest; and (iii) a civil penalty.

## DEFENDANT

5.    **Nathan Fuller,** resides in Cypress, Texas.  He is the founder, owner, and sole member of Privvy.  Fuller also previously operated under an assumed name, Gateway Digital Investments ("Gateway").

## JURISDICTION AND VENUE

6.    The Commission brings this action pursuant to authority conferred upon it by Sections 20(b) and 20(d) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u(d) and 78u(e)].

7.    This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), (e), and 78aa].

8.     Fuller offered and sold joint-venture interests, which are securities because they are investment contracts under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)].

9.     In connection with the conduct described in this Complaint, Fuller, directly or indirectly, made use of the mails or the means or instruments of transportation or communication in interstate commerce by, among other means, soliciting and accepting investments from investors in various states via the Internet, transmitting joint-venture agreements via email, and accepting investor deposits via mail, wire, or other electronic-funds transfers.

10.     Venue is proper in this District pursuant to Section 20 of the Securities Act [15 U.S.C. § 77t] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Fuller transacted business in this District, and certain of the acts, practices, transactions, and courses of business constituting violations of the securities laws alleged in this Complaint occurred within this District.  Specifically, during the Relevant Period, Fuller solicited investors and executed agreements with investors within this District when he engaged in at least some of the conduct alleged herein.  Furthermore, Privvy was based in Cypress, Texas, where Fuller also resided.

## FACTUAL ALLEGATIONS

**A.     Fuller solicited investors to sign joint-venture agreements.**

11.     As early as October 2022, Fuller began soliciting investors to invest in a venture that would purportedly generate profits by trading crypto assets using AI-based crypto asset trading bots Fuller developed.  Fuller represented that these bots operated autonomously to connect to and monitor different crypto asset trading platforms, buy different crypto assets, and sell those crypto assets on other crypto asset trading platforms.

12.    Initially, Fuller did business under the assumed name, Gateway.  In early 2023, he began using the assumed name "Privvy Investments."  In July 2023, he formed Privvy in Wyoming.

13.    Fuller solicited investor interest in the investment using a word-of-mouth referral program that compensated existing investors for bringing in other investors.  He also touted the investment on a publicly available Privvy website he controlled and he often also messaged acquaintances on Facebook Messenger and other messaging apps to solicit interest in the investment.  In the solicitation process, Fuller emailed some investors a link to an October 2022 YouTube video in which he purported to demonstrate his automated trading.

14.    Most investors had no pre-existing relationship with Fuller.  He pitched some investors personally, but others never interacted with him directly; they simply invested after receiving information about the investment from another investor.

15.    When investors invested money, they entered joint-venture agreements signed by Fuller.  These agreements stated that the parties "agree[d] to a mutually benefiting relationship" to "fulfill a Crypto-Currency venture to fund" with either (1) "Gateway Digital Investments AKA Nathan Fuller"; (2) "Privvy Investments AKA, Nathan Fuller"; or (3) "Privvy Investments."  The agreements specified that Fuller was "responsible for the monitoring and performance of the other parties [sic] investment funds" and "for the applicable maintenance and investment strategy related to said funds."  The agreements required the investor "to make a capital contribution . . . for the success of the Joint Venture" and to withdraw the funds no earlier than after a specified period, which typically ranged from 30 to 45 days.

16.    The agreements did not obligate investors to do anything more to further the joint venture than invest money.  Fuller promised orally, via Privvy's website, in YouTube videos,

and through email and texts to use investor money to generate profits, specifically by trading crypto assets using AI-based crypto trading bots he developed.

17.     The initial agreements provided that Fuller was entitled to retain 10% of the trading profits.  Later versions added a clause allowing him to retain 1% of the principal and interest as an additional fee.

18.     No registration statement was ever filed with the Commission or any state regarding Fuller's offer and sale of the joint-venture interests.

**B.     Fuller made false and misleading statements and omissions to induce investors to invest in his scheme.**

19.     In connection with his solicitations of investors, Fuller regularly claimed throughout the Relevant Period that he used AI-based crypto trading bots to engage in high-frequency crypto asset arbitrage to take advantage of small price differences that occur when the same crypto asset trades on different crypto asset trading platforms.  He further represented that the investment had limited downside risk, telling multiple investors via email, telephone, or via YouTube that the bots featured stop-loss coding that automatically limited losses to 3%.

20.     Privvy's website, which was public-facing and controlled by Fuller throughout the Relevant Period, bolstered these claims with statements like the following:

    a.  "Tell us how much money you want to make and let our bots figure out the rest for you."

    b.  "Our AI network scans thousands of cryptocurrencies to identify the best returns possible."

    c.  "This platform was built by coders and traders to do one thing and one thing only: Make profitable returns month over month for every investor."

    d.  "With AI bots and a neural net, your profitable returns are limitless and your risk are [sic] limited."

21.     Throughout the Relevant Period, Fuller typically promised investors in oral

communications and via text messages that their investment would generate returns of over 40-50% within 30 to 45 days. But he also claimed that the investments could earn even greater returns. For example, in or around February 2023, Fuller made a baseless guarantee to investors in a text message that their investments would double in 45 days. In October 2022, he told one investor via text message that the average monthly returns were 80%, and he told another investor via text message that he could nearly "double" the investor's returns.

22.    In an October 2022 YouTube video, Fuller similarly claimed that he had generated returns for one couple exceeding 100% in 21 days. In the same video, he stated:

a. "In layman's terms, we build bots that go out and purchase crypto and holds them [sic] for profitable returns."

b. "At this point now, things have been so profitable that we can pretty much guarantee certain ROIs in contracts."

c. "The max loss that we take on any position is minus 3%."

23.    Despite all of these representations, Fuller's purported bots did not function as claimed. To the extent they functioned at all, their code did not include stop-loss or AI functionality. Furthermore, Fuller did not use the vast majority of investor funds to trade in crypto assets as he represented he would. Instead, he only used approximately $380,000—about 3% of the investment funds raised—to purchase crypto assets, and he did so without using any crypto bots. These crypto asset transactions did not reflect the automated high-frequency arbitrage trading that Fuller promised, and they generated no profit.

24.    Fuller also made false representations regarding his own qualifications and the investment's risk and safety. Beginning at least as early as October 2022 through as late as August 2023, in text messages, emails, phone calls, and oral communications, he told investors that he held a money-transmitter license issued by the Texas Department of Banking and that he held a surety bond to secure investor money. From about October 2022 to March 2023, Fuller

6

represented to some investors verbally and via email that their investments were guaranteed by the FDIC.  To other investors, he claimed in text messages and/or in the joint venture agreements beginning around October 2022 and through August 2023 that the investments were protected by an insurance policy issued by Texas Guarantors & Securities or by a $5 million biBERK professional-liability insurance policy.

25.    In reality, Fuller held no money-transmitter license or surety bond and no such FDIC protections or insurance coverage existed.  In fact, Texas Guarantors & Securities was not a real company; Fuller made it up.  And while Privvy did hold a biBERK policy for approximately two months, providing $2 million in coverage for "commercial general liability," the insurance-coverage certificate showed that the policy specifically excluded coverage for professional liability.  Fuller provided the certificate to at least one investor but altered it to falsely reflect $5 million in professional-liability insurance.

**C.    Fuller tried to lull investors by providing fake account statements and fake correspondence from fictitious companies.**

26.    Fuller created a web-based app that investors used to access account information. He uploaded false account balances to the app, reflecting trading profits that did not exist.  He also fabricated and emailed fake account statements to some investors, purporting to show profitable balances in Privvy-linked accounts at a bank, a digital currency company, and "Digital Currency Capital Group," a fabricated entity.  One account statement, for example, reflected that the investor had made a profit exceeding 334% from October 2023 to March 2024.  In reality, the bank and digital currency company held no such accounts, and Digital Currency Capital Group was a fake entity invented by Fuller, with a name similar to an established crypto asset investment firm.

27.    When investors became concerned that they could not withdraw their funds from

their accounts, Fuller invented a fake company called Blockchain Audit Solutions ("Blockchain").  He then used ChatGPT to generate a phony letter from Blockchain, which he sent to investors in June 2024 to quell concerns about investors' inability to withdraw assets. The letter falsely told investors that their accounts had been transferred from Privvy to Blockchain and that the accounts were being audited and required "KYC verification" before balances could be liquidated and moved to "a newly formed liquidation trust."

**D.      Fuller misappropriated investor funds to make Ponzi-like payments and otherwise fund his own lifestyle.**

28.      From October 2022 through at least April 2024, Fuller received approximately $12.3 million from approximately 150 investors in nine states and two foreign countries.  Fuller misappropriated investment proceeds totaling at least $6.2 million, spending investor funds on an approximately $1 million house, gambling, trading cards, travel, a Jeep, and other personal expenses.  Separately, he used approximately $5.5 million of investor funds to make Ponzi-like payments to investors.

<u>**FIRST CLAIM FOR RELIEF**</u>

**Violations of Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c)]**

29.      The Commission re-alleges and incorporates paragraphs 1-28 by reference as if fully set forth herein.

30.      By engaging in the acts and conduct alleged in this Complaint, Fuller, directly or indirectly:

a.      made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement was in effect;

b.      for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities as to which no registration statement was in effect; and

c.      made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement had been filed.

31.     By engaging in the conduct described above, Fuller has violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)].

## SECOND CLAIM FOR RELIEF

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

32.     The Commission re-alleges and incorporates paragraphs 1-28 by reference as if fully set forth herein.

33.     By engaging in the acts and conduct alleged herein, Fuller, directly or indirectly, in connection with the purchase or sale of securities, by the use of a means or instrumentality of interstate commerce, or of the mails, knowingly or with severe recklessness:

a.   employed a device, scheme, or artifice to defraud;

b.   made an untrue statement of a material fact, or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

9

    c.   engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

34.    By reason of the foregoing, Fuller has violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]

35.    The Commission re-alleges and incorporates paragraphs 1-28 by reference as if fully set forth herein.

36.    By engaging in the acts and conduct alleged herein, Fuller, directly or indirectly, in the offer or sale of securities, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, has:

    a.   knowingly or with severe recklessness employed a device, scheme, or artifice to defraud;

    b.   knowingly, with severe recklessness, or negligently obtained money or property by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    c.   knowingly, with severe recklessness, or negligently engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

37.    By reason of the foregoing, Fuller has violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## JURY DEMAND

The SEC demands a trial by jury on all issues that may be so tried.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a judgment:

A.      Permanently enjoining Fuller from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

B.      Permanently enjoining Fuller from directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent him from purchasing or selling securities for his own personal account;

C.      Ordering Fuller to disgorge all ill-gotten gains obtained as a result of the violations alleged herein, plus prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)]; and

D.      Ordering Fuller to pay a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] for violations of the federal securities laws as alleged herein.

E.      Imposing such other and further relief as the Court may deem just and proper.

Dated:  May 28, 2026.                             Respectfully submitted,


                                                  SECURITIES AND EXCHANGE COMMISSION


                                                  */s/ Tyson M. Lies*
                                                  Tyson Lies
                                                  Texas Bar No. 24087927
                                                  United States Securities and
                                                  Exchange Commission
                                                  Burnett Plaza, Suite 1900
                                                  801 Cherry Street, Unit 18
                                                  Fort Worth, TX  76102
                                                  Telephone:  (817) 978-1421
                                                  Facsimile:  (817) 978-4927
                                                  liest@sec.gov

                                                  *Attorney for Plaintiff*